UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
                                   :
ARTHUR J. SYKEN,                   :
                                   :
            Plaintiff              :
                                   :
      -against-                    :     02 Civ. 4673 (LMM)
                                   :     MEMORANDUM AND ORDER
STATE OF NEW YORK, EXECUTIVE       :
DEPARTMENT, DIVISION OF HOUSING    :
AND COMMUNITY RENEWAL              :
                                   :
            Defendant.             :
                                   :
----------------------------------X

McKENNA, D.J.


     Arthur Syken ("Syken" or "Plaintiff"), a white male of
Jewish faith, brings this amended action against the State of
New York's Division of Housing and Community Renewal ("DHCR" or
"Defendant") alleging race and age discrimination under Title
VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §
2000e et. seq. ("Title VII").  Defendant State of New York now
moves for summary judgment pursuant to Rule 56 of the Federal
Rules of Civil Procedure dismissing Plaintiff's Amended
Complaint in its entirety.  For the reasons stated below,
Defendant's motion is GRANTED IN PART and DENIED IN PART.

## I.   Background

The facts of this case, taken in the light most favorable to Plaintiff as the nonmoving party, are as follows.

Plaintiff began working for DHCR in the Office of Rent Administration on June 1, 1987, as a Junior Rent Examiner, grade SG-9. (Def. Rule 56.1 Stmt. ¶ 1.)   His position is classified under the Civil Service Law as Civil Service protected. (Id.) He was promoted to Rent Examiner I, grade SG-14, on September 15, 1988 and then again to Rent Program Specialist I, grade SG-18, and has held that position and grade since June 17, 1993. (Def. Rule 56.1 Stmt. ¶¶ 2-3.)

Plaintiff was assigned to the ETPA Policy Unit of the Emergency Tenant Protection Act/Luxury Decontrol ("ETPA/LD") Bureau, where his supervisor during 1993 and part of 1994 was Robert Maichin. (Def. Rule 56.1 Stmt. ¶ 3; Affidavit of John Stellar, Feb. 23, 2005 ("Stellar Aff.") ¶ 5) During most of 1994, Plaintiff was absent from work because of disability. (Def. Rule 56.1 Stmt. ¶ 4.)

In June of 1996, the Policy Unit was transferred from ETPA/LD to the Policy Bureau, leaving behind three employees. Plaintiff was one of these employees.  Maichin was transferred along with the bulk of the office, and then in 1998 was promoted to DHCR's Office of Community Development in Lower Manhattan.

(Def. Rule 56.1 Stmt. ¶¶ 5-6.) Arthur Shulman was the unit supervisor while Maichin was on probation at his new assignment. (Def. Rule 56.1 Stmt. ¶ 8, Pl. Rule 56.1 Stmt. ¶ 8.) After Maichin's promotion, the Office of Rent Administration ("ORA") began seeking a replacement for him. (Def. Rule 56.1 Stmt. ¶ 9.)

Plaintiff applied for Maichin's former position, but was rejected. Defendant asserts that, because Plaintiff had not passed a qualifying exam, he was not eligible for the promotion he sought. Plaintiff agrees that he was ranked 35th of 39 candidates on a promotion list other than the one Defendant used to try to fill the position, but asserts transfer or some other means allowed his promotion. Maichin failed the probationary period at his new position, and so returned to his former, still-unfilled post at the Policy Bureau in April 1999. (Def. Rule 56.1 Stmt. ¶ 11.)

In October of 1997, the Luxury Decontrol Unit ("LD") split from the ETPA/LD unit to which Plaintiff was assigned. Patrick Siconolfi, head of the Overcharge Bureau, took charge of LD as well. (Def. Rule 56.1 Stmt. ¶ 12.) October 1997 was the first time that Siconolfi became an official part of Plaintiff's chain of command; however, Plaintiff alleges that Siconolfi also participated in the earlier decision denying his promotion to Maichin's vacant former position. (Def. Rule 56.1 Stmt. ¶ 13; Pl. Rule 56.1 Stmt. ¶ 13.)

Defendant asserts that, while in the LD Bureau, Plaintiff claimed an eye disability preventing his assignment to a case processing position requiring that he read for a significant percentage of the work day.  Plaintiff disputes this assertion, but both parties agree that after a brief absence due to illness Plaintiff was transferred to the Freedom of Information Law ("FOIL") and Subpoena unit in November of 1998. (Def. Rule 56.1 Stmt. ¶¶ 15-16; Pl. Rule 56.1 Stmt. ¶¶ 15-16.)

On October 28, 1998, Plaintiff telephoned DHCR's personnel office and stated that he wished to file a harassment complaint against his superior, Siconolfi. (Def. Rule 56.1 Stmt. ¶ 17.) On November 10, Plaintiff faxed a complaint to Ed Oliver, DHCR's Affirmative Action Officer.  (Def. Rule 56.1 Stmt. ¶ 18.) Plaintiff then filed an administrative complaint with the New York State Division of Human Rights on January 25, 1999, stating that he had a condition that "may" be a disability and identifying himself as Jewish.  (Def. Rule 56.1 Stmt. ¶¶ 19-20.)

DHCR defended against the complaint, and claimed that 1) Plaintiff was ineligible under applicable Civil Service law for the promotion he sought, and 2) even if that was untrue, Siconolfi was uninvolved in the promotion decision.  (Def. Rule 56.1 Stmt. ¶ 23.)  DHCR further asserted, regarding Plaintiff's transfer to the FOIL/Subpoena unit, that no demotion had taken place because Plaintiff's nominal title, salary, and opportunity

for advancement had remained unchanged. (Def. Rule 56.1 Stmt. ¶ 24.)  Plaintiff's responsibilities in his new position were generally handled by more junior personnel than were those in his position with the Policy Bureau. (Pl. Reply Memo. Law Opp. S.J., Ex. 20, Aff. Allan Weinblatt.)

DHCR referred Plaintiff for both medical and psychiatric evaluations. (Def. Rule 56.1 Stmt. ¶ 25; Pl. Rule 56.1 Stmt. ¶ 25.)

The U.S. Equal Employment Opportunity Commission ("EEOC") issued Plaintiff a right to sue letter on March 25, 2002, after which he filed a complaint in this Court alleging discrimination based on his religion and disability, failure to promote due to discrimination, and retaliation.  (Def. Rule 56.1 Stmt. ¶¶ 27-29.)  Plaintiff alleged in particular: a harassing telephone call from his supervisor in 1994; the removal of the partition from his work area in 1997; the failure to promote him and his subsequent demotion, and Siconolfi's hand in both decisions; and retaliation for filing grievances, by methods including the psychiatric and medical evaluations. (Def. Rule 56.1 Stmt. ¶ 30.)

This Court dismissed the sexual harassment claims, for which administrative remedies had not been exhausted, and those filed under the ADA and New York State and City human rights laws. (Memo. and Order, April 2, 2003.)

The Court now considers those claims Plaintiff was granted
leave to replead, alleging discriminatory refusal to promote and
unlawful retaliation.

## II. Discussion

### A.    Standard of Review

A motion for summary judgment "shall be rendered forthwith
if the pleadings, depositions, answers to interrogatories, and
admissions on file, together with the affidavits, if any, show
that there is no genuine issue as to any material fact and that
the moving party is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(c).   "A fact is 'material' for these
purposes if it 'might affect the outcome of the suit under the
governing law.'"   Gayle v. Gonyea, 313 F.3d 677, 682 (2d Cir.
2002) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
248 (1986)).   "An issue of fact is 'genuine' if 'the evidence
is such that a reasonable jury could return a verdict for the
nonmoving party.'"   Id.   In weighing a motion for summary
judgment, ambiguities or inferences to be drawn from the facts
must be viewed in the light most favorable to the non-moving
party.   See Thompson v. Gjivoje, 896 F.2d 716, 720 (2d Cir.
1990).   However, "the non-moving party must come forward with

specific facts showing that there is a genuine issue for trial."
Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475
U.S. 574, 587 (1986)(citing Fed. R. Civ. P. 56)(emphasis
omitted).  "[C]onclusory statements, conjecture or speculation
by the party resisting the motion will not defeat summary
judgment."  Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir.
1996)(citations omitted).


B.   **Plaintiff's Claims**


**1. Failure to Promote**

In order to make out a Title VII prima facie case for
falure to promote, a plaintiff must demonstrate that (1) he is a
member of a protected class, (2) he was qualified for the job
for which he applied, (3) he was denied the job, and (4) the
denial occurred under circumstances giving rise to an inference
of discrimination on a basis forbidden by Title VII.  See Howley
v. Town of Stratford, 217 F.3d 141, 150 (citing McDonnell
Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)).  These four
elements must be established by a preponderance of the evidence.
See Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248,
252-53 (1981).  The Court of Appeals has characterized
plaintiffs' prima facie burden as "minimal" or "de minimis."  See
Woodman v. WWOR-TV, Inc. 411 F.3d 69, 76 (2d Cir. 2005)(citing

<u>Zimmermann v. Assocs. First Capital Corp</u>., 251 F.3d 376, 381 (2d Cir. 2001)).

If a plaintiff suing under Title VII succeeds in making out its prima facie case, the defendant then faces a rebuttable presumption of discrimination that it must defeat by proffering a "legitimate, non-discriminatory" rationale for the decision not to promote.  See <u>Harding v. Memorial Sloan-Kettering Cancer Center</u>, 1999 WL 459826, *3 (S.D.N.Y. June 29, 1999) (quoting <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 506 (1993)).  If the defendant can offer such a rationale, the burden returns to the plaintiff, who must produce evidence refuting that rationale in order to avoid summary judgment. See <u>Gallo v. Prudential Residential Servs., Ltd. Partnership</u>, 22 F.3d 1219, 1224-25 (2d Cir. 1994).

Plaintiff has failed, on the evidence submitted in opposition to Defendant's motion, to make out a prime facie case under Title VII because he has failed to establish that he was eligible for the promotion sought.  The promotion was governed by the New York Civil Service Law, and no applicable section of that statute or corresponding Rules permitted Plaintiff to obtain the position for which he had applied.  Tellingly, Plaintiff acknowledges Defendant's list of four lawful methods by which the civil service position could be filled in his Rule

56.1 statement.[1]   (Def. Rule 56.1 Stmt ¶ 43.)   Plaintiff then
tacks onto this acknowledgment the bare allegation that
"...there are other approved methods of filling a vacancy
pursuant to Civil Service Law." Id.   Such an unsupported
assertion will not defeat a motion for summary judgment when
Defendant has shown that Plaintiff could not take advantage of
the enumerated methods.

*Choosing the Promotion List*

     Once DHCR decided to fill Maichin's vacated position, ORA
and DHCR's Office of Human Resources Management assessed the
skills required and determined the most appropriate promotion
list from which to hire a replacement.   DHCR chose the Rent
Program Specialist II list.   Defendant affirms that the only
other list considered, the Program Research Analyst II list, was
rejected because candidates on that list possess sophisticated
statistical analysis skills not required for the position.

---

[1] Defendant lists 4 methods for filling a Civil Service position:
1) The highest ranking candidates on the appropriate Civil
Service list may be interviewed, and any of the top 3 candidates
willing to accept the position may be hired (Civil Service Law
§61(1)); 2) an employee already serving in that title may be
reassigned to the position; 3) an employee, under certain
circumstances, may be transferred, with the approval of the
Civil Service, to the position from another title if Civil
Service has held that the titles are transferrable; or 4) an
employee may be appointed pursuant to the provisions of Civil
Service Law §70(4) provided that all of the requirements are met
and approval is obtained from Civil Service (Def. Rule 56.1
Stmt. ¶43.)

Plaintiff does not assert that DHCR's choice of the Rent Program Specialist II list was an unreasonable business decision.  Rather, he asserts 1) that despite his absence from the list used to fill the position, he could nonetheless have been awarded the promotion he sought and 2) that Siconolfi helped pick the list and an inference of discrimination follows.

In fact, though, no provision of the Civil Service Law or Rules would have permitted Plaintiff to be promoted from a different list without a prior Civil Service determination that the two lists were equivalent.  <u>See</u> Civil Service Law 61(1), 70(4).

Even had such a determination been made, Plaintiff was too low on the list he did appear on—Rent Examiner III—to be lawfully promoted.  Only the highest-ranking candidates may be interviewed, and any of the top three candidates willing to accept the position may be appointed.  <u>See</u> Civil Service Law 61(1). Plaintiff, as already noted, ranked 35th of 39 candidates on his list.

Finally, whether or not Siconolfi participated in the choosing of the list is irrelevent.  Even had the other list been used, Plaintiff would have remained ineligible.  In any event, an allegation of a small number of discriminatory remarks by Siconolfi cannot suffice to taint a later decision in which he might—giving full credence to Plaintiff's allegations—have

played, at the most, a supporting role.

*Transfer and Reassignment*

Plaintiff asserts that, in addition to promotion from the lists discussed above, he could have been transferred into Maichin's former position.  Without prior approval by the Civil Service, however, confirming that the applicant's title and the title of the vacant position are transferable, no transfer is permitted.  See Civil Service Law 70(4)("[P]rovided, however, that such employee is holding a position in a similar grade.") The grade Plaintiff held and the grade of the position he applied for were not similar.  Plaintiff's position at the time of application was SG-18, while Maichin's vacated position was five grades higher.

Reassignment was similarly impossible, for the same reason. A reassignment occurs where an employee is moved between organization units or geographic locations of the same appointing authority without changing title or salary grade. See Civil Service Rule 1.2(b)(2).

*The Already-Serving Argument*

Plaintiff also claims an entitlement to Maichin's former position based on his allegation that he was performing Maichin's former duties prior to applying for the job.

Plaintiff's testimony, however, alleges only that he was doing work that Maichin, as a supervisor, assigned to subordinates. He does not allege that he acted as supervisor.  Doing work that Maichin was responsible for assigning is not the same as doing Maichin's job of actually supervising the unit.  In any event, Plaintiff points to no provision of the Civil Service Law or Rules that would allow him to become eligible for the promotion by in fact fulfilling Maichin's duties.[2]

*Effect of Prior Order*

Plaintiff asserts that in a prior Memorandum and Order dated April 2, 2003, this Court held that Plaintiff had made out his prima facie case for failure to promote under Title VII. (Pl. Memo. Law at 14.)  He further argues that, since this Court has already determined that he has satisfied his burden of making out a prima facie case, the Court must now analyze his claims under the second and third steps of the McDonnell Douglas test. (Id.)

However, the April 2, 2003 order pertained to a motion to

---

[2] Plaintiff relies most heavily on the conjunction of Civil Service Law §52.7 and Civil Service Rule §4.2.  (Pl. Mem. Law, pp 14-15.)  Section 52.7, however, only applies to non-competitive promotions.  Plaintiff has neither asserted nor demonstrated that this promotion was non-competitive.  That the position ultimately went unfilled is significant in that no person outside Plaintiff's protected class was hired, but does not create an inference that fewer than two other applicants desired the position as the cited provisions require.

dismiss under Rule 12(b) of the Federal Rules of Civil
Procedure.  Plaintiff, to prevail at that stage, needed only to
sufficiently allege his claims.  Now, to defeat Defendant's
motion for summary judgment, Plaintiff must show that he was in
fact eligible for promotion under the Civil Service Law and
Rules.  He has failed to do so.  The law is "well established
that 'conclusory statements, conjecture, or speculation'" are
inadequate to defeat a motion for summary judgment. _Opals on Ice
Lingerie v. Body Lines, Inc.,_ 320 F.3d 362, 370 n. 3 (2d Cir.
2003) (quoting _Kulak v. City of New York,_ 88 F.3d 63, 71 (2d
Cir. 1996)).


*Second and Third McDonnell Douglas Steps*

A district court must generally analyze the defendant's
rebuttal evidence even where the plaintiff has failed to make
out his prima facie case.  See _Fosen v. The New York Times_, 2006
WL 2927611, *5 (S.D.N.Y. 2006) (citing _U.S. Postal Serv. Bd. of
Governors v. Aikens,_ 460 U.S. 711, 715-716 (1983)).[3]

Here, however, Defendant's rebuttal under the second
_McDonnell Douglas_ step repeats in part its challenge to

---

[3] Explaining that regardless of whether plaintiff has made a
prima facie case, the district court should evaluate defendant's
rebuttal evidence because the court "has before it all the
evidence it needs to decide whether 'the defendant intentionally
discriminated against the plaintiff.'" (quoting _Texas Dept. of
Community Affairs v. Burdine,_ 450 U.S. 248, 253 (1981))

Plaintiff's prima facie case under the first.  Defendant claims that the denial of Plaintiff's promotion application was not discrimination but rather 1) unavoidable because civil service rules prevented the promotion, whichever promotion list Defendant used, and 2) a function of a business decision to use a list upon which Plaintiff did not appear.

Once a Title VII claim moves to the second and third McDonnell Douglas steps, the employer "need not prove by a preponderance that the reasons for its actions were not discriminatory, but may simply present clear and specific reasons for the actions." See Little v. State of NY, 1998 WL 306545, *4 (E.D.N.Y. 1998) (quoting Gibbs v. Consolidated Edison Co. of NY, Inc., 714 F.Supp. 85, 89 (S.D.N.Y. 1989))(citations omitted)). "The employer will have sustained this burden of production by producing *any evidence* of non-discriminatory reasons, whether ultimately persuasive or not." Little, 1998 WL 306545 at *4 (citing St. Mary's Honor Center v. Hicks, 509 U.S. 502, 509 (1993)).

The plaintiff, still shouldering the burden of proof, must then prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were a mere pretext for discrimination. See Burdine, 450 U.S. at 252-53; see also Chambers v. TRM Copy Centers, 43 F.3d 29, 38 (2d Cir. 1994). Clarifying the plaintiff's burden, the Supreme Court held in

Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 146
(2000), that while evidence that the employer's non-
discriminatory rationale amounted to pretext does not mandate a
verdict in favor of the plaintiff, neither is such evidence
insufficient to submit a case to a jury as a matter of law. In
2000, the Court of Appeals, applying the McDonnell Douglas test,
held that summary judgment was appropriate in employment
discrimination cases were "evidence was insufficient to permit a
reasonable trier of fact to find that age discrimination was the
reason for his discharge." James v. New York Racing Ass'n, 233
F.3d 149, 157 (2d Cir. 2000).  Where, as here, a defendant has
articulated a non-discriminatory rationale that the plaintiff
fails to refute with evidence, no reasonable jury could return a
verdict in the plaintiff's favor.


*DHCR's Business Rationale*

        The decision to use the Rent Program Specialist II list was
a business decision, and is reviewed here not for intelligence
but for evidence of discrimination.  See Dister v. Continental
Group, Inc., 859 F.2d 1108, 1116 (2d Cir. 1998) (quoting
Graefenhain v. Pabst Brewing Co., 827 F.2d 13, 20 (7th Cir.
1987)("A business decision need not be good or even wise.  It

simply has to be nondiscriminatory")).[4]

The business rationale that Defendant points to—namely, the fact that the Rent Program Specialist II list was deemed more appropriate—does not smack of pretext.  More important, Plaintiff fails to contradict the specific business rationale proffered: i.e., that the advanced statistical abilities candidates on the Program Research Analyst II list possess were unnecessary for the position. (Stellar Aff. ¶ 19.)

*Siconolfi's Alleged Role*

Whether or not Siconolfi made the anti-semitic statement that Plaintiff alleges is a matter in dispute, but the evidence submitted by Defendant and uncontroverted by Plaintiff demonstrates that Siconolfi had no influence over the promotion decision.[5]  See Stellar Aff. ¶¶ 9, 26, 28-34.  Siconolfi was head of the Overcharge Bureau, not of the Policy Bureau where the position was located.  Plaintiff has produced no evidence

---

[4] However, merely alleging that a promotion decision was a business decision will not shield an employer from further inquiry where the decision taken is suspicious or implausible. ("A court's perception that an employer misjudged an employee's qualifications might be probative in some cases on the issue of pretext." Dister v. Continental Group, Inc., 859 F.2d at 1116 (2d Cir. 1998) (quoting Texas Dept. of Community Affairs v. Burdine, 450 U.S. at 259 (1981)).  In the instant case, the business decision articulated is reasonable on its face.

[5] Plaintiff alleges that in 1998 Siconolfi, when Plaintiff asked him for help in obtaining Maichin's former position, replied that he should "call your Jewish friend Ellen Conovitz."  (Am. Compl. ¶¶81-87.)

tending to suggest that Siconolfi was consulted about the decision, whereas Defendant has produced evidence that he was not. Id.  No nexus exists, therefore, between the alleged statements and the alleged discriminatory promotion decision save Plaintiff's conclusory allegation.

Therefore, even if Plaintiff had established a prima facie case that required Defendant to articulate the explanation given for not promoting Syken, which he has not, Plaintiff has failed to carry his burden to demonstrate that the proferred explanation is mere pretext.

As to Syken's Title VII religious discrimination claim for failure to promote, for the reasons discussed above summary judgment is GRANTED.

## 2. Plaintiff's Retaliation Claims

A. Partition Removal

Plaintiff complains that his desk partition, provided to help him cope with his eye problems, was removed and that its removal was unlawful retaliation for Plaintiff's making sexual harassment complaints against Siconolfi to Carol Carley. (Pl. Rule 56.1 Stmt. ¶ 62;  Am. Compl. ¶¶ 44-50).  This Court has already held that events prior to March 31, 1998 are not

actionable.  Whether the 300 days ran from the mailing of
Plaintiff's letter in January 1998 or the partition removal
itself in November 1997, the action is untimely and Plaintiff's
claim is DISMISSED.

Plaintiff cites <u>National Railroad Passenger Corp. v.
Morgan</u>, 536 U.S. 101 (2002), for the proposition that the
removal of his partition can still be considered as evidence of
Defendant's intent concerning the other acts of retaliation he
alleges.  (Pl. Memo. Law p. 24.)  For this limited purpose, and
not as a "discrete discriminatory act",[6] the removal of the
partition may be considered in the context of Plaintiff's
retaliation claims based his job transfers at DHCR.


B. Assignment as Chain of Custody (Subpoena) Clerk


Plaintiff alleges that his transfer to the Subpoena Clerk
position was retaliation for his complaints after being denied
the promotion discussed above.  (Am. Compl. ¶¶ 60-66)  In its
prior Memorandum and Order, this Court held that the transfer to
Subpoena Clerk could constitute an "adverse employment action"
under <u>Galabya v. New York City Board of Education</u>, 202 F.3d 636
(2d Cir. 2000). (Mem. And Order pp. 10-12 (4/2/2003))

---

[6]<u>See</u> <u>National Railroad Passenger Corp. v. Morgan</u>, 536 U.S. 101,
114 (2002)

Defendant seems to revisit the Galabya issue, emphasizing that diminution of title or responsibilities, or loss of benefits, can only be considered adverse when those factors were "unique to a particular situation." Galabya, 202 F.3d at 640; Def. Reply Mem. at 21.  Whether or not the transfer hurt Plaintiff's promotion chances, however, it caused a significant reduction in his responsibilities and his title.

To make out a prima facie case for retaliation, a plaintiff must show (1) that he participated in a protected activity which his employer was aware of; (2) he suffered an adverse employment action; and (3) there exists a causal connection between the participation in the protected activity and the adverse employment action.  See Holt v. KMI-Continental, Inc., 95 F.3d 123, 130 (2d Cir. 1996).  At issue here is whether Plaintiff has created a genuine issue of material fact as to the causal connection between his complaint and the alleged retaliation.

The Defendant has produced substantial evidence suggesting that its motivation for transferring Syken to the Subpoena Clerk position was not retaliation.  In an email Siconolfi wrote on May 11, 1998, he directed Plaintiff's immediate supervisor  to strengthen its chain of custody procedures by assigning someone to take resonsibility for the documents.  He specifically noted that "A mail clerk or laborer WILL NOT meet the needs of this assignment..." (Stellar Aff., Ex. Q (emphasis in original).)

Defendant argues that Syken was the best choice for the job, because in an office comprised of attorneys and clerks he was not a member of the bar and unable to perform clerical work because of his alleged disability.  (Def. Mem. Law pp. 21-22.) Defendant's other claimed rationale for the transfer—a desire to accommodate Plaintiff's alleged eye disability—seems only to have arisen after the onset of litigation and is unsupported.

Defendant has compiled evidence of non-retaliatory motivation; but, Plaintiff has adequately supported his allegation that Siconolfi discriminated against him, and that Defendant's stated motivation may not be the true one. Siconolfi was a moving force in the decision to create the new Subpoena Clerk position and earlier emailed on October 27, 1997 to suggest that a new position be found for Plaintiff because "for a period of at least eleven months he has had no work responsibilities." (Stellar Aff., Ex. N.)  Plaintiff has affirmed that Siconolfi threatened him with denial of promotion after Plaintiff reported the alleged sexual harassment, and that he retaliated in other ways as well (Am. Compl. at 50-56.)  It is not sufficient for a defendant seeking summary judgment to show that the evidence favors its position.  Where any genuine issue of material fact remains summary judgment must be, and is here, DENIED.

C. Assignment to Freedom of Information Law Unit

Syken alleges that he was again demoted in November of 1998, to the FOIL Unit, in retaliation for filing a union grievance about his previous demotion to Subpoena Clerk. (Am. Compl. ¶¶ 66-67)  After Defendant pointed out that the union grievance was not filed until two days after the transfer to the FOIL Unit, Plaintiff modified his allegation to describe the transfer as retaliation for a phone call he made to Carol Carley on October 28 of that year wherein he stated his intention to file a complaint. (Pl. Mem. Law p. 22; Def. Reply Mem. Law p. 11.)

This Court has already held in its prior Memorandum and Order that the transfer constituted an adverse employment action, so the issue remaining is whether Plaintiff has established the third and final element of his prima facie case: i.e., that there was a causal connection between the protected activity and the adverse employment action. See Holt, 95 F.3d at 130.  Defendant asserts that Plaintiff was reassigned to the FOIL Unit as an accomodation for his alleged disabilities, after Plaintiff complained that he was physically unable to serve as a Subpoena Clerk (Def. Reply Mem. Law p. 11).

An employee who undertakes a protected activity that is

followed closely in time by an adverse employment action may use
the temporal connection as evidence of retaliation.  See
Manoharan v. Columbia Univ., 842 F.2d 590, 593 (2d Cir. 1988).
Here, both to 1) statisfy the third element of his prima facie
case and to  2) maintain a material issue of fact sufficient to
survive a motion for summary judgment once Defendant articulates
a non-retaliatory explanation, Plaintiff may look to the
inference created by the short time between his announced
intention to file a protected complaint.

Summary judgment can be granted in the face of such an
inference where "an extensive period of progressive discipline"
began well before the protected activity was undertaken.  See
Slattery v. Swiss Reinsurance America Corp., 248 F.3d 87, 94 (2d
Cir. 2001)(discipline began five months prior to protected act).
Here, although the FOIL transfer was certainly part of a string
of events that Plaintiff might characterize as "discipline," all
date back to or stem from the initial denial of promotion that
Plaintiff complains of.  No inference exists here, as did exist
in Slattery, that the trail of employer actions extending back
in time precludes a finding that the most recent adverse action
constituted unlawful retaliation.  Plaintiff has proferred
evidence suggesting that Defendant's claimed rationale may be
false, creating a triable issue of material fact, and summary
judgment is therefore DENIED.

**D. Medical and Psychiatric Exams**


Plaintiff alleges that he was ordered to undergo medical and psychiatric evaluations, and that these evaluations were unlawful retaliation for his complaints to the union and NYSDHR.

This Court ruled, in its prior Memorandum and Order, that evaluations could constitute an adverse employment action. However, Plaintiff has failed here to establish his prima facie case for retaliation.  He has not shown a causal connection between his participation in the protected activity and the adverse employment action to establish the third element of his prima facie case, and has therefore failed to create a rebuttable presumption of retaliation. See Holt v. KMI-Continental, Inc., 95 F.3d at 130.

As noted above in the discussion of Plaintiff's other retaliation claims, an adverse employment action following participation in a protected activity can create an inference of retaliation.  However, DHCR's order that Syken undergo medical and psychiatric evaluation did not most closely follow his complaints.  Instead, DHCR announced the order in a letter dated December 8, 1998 after Plaintiff was admitted to the hospital on October 28, 1998 and submitted a letter from his physician dated November 12, 1998 diagnosing him with a number of physical

ailments caused by psychological stress. (Stellar Aff., Exs. S, T)

No presumption of discrimination can be said to arise when an employer makes a decision both explicitly provided for by the Civil Service Law and utterly reasonable in the context of the employee's own needs and actions. See NY Civil Service Law § 71(1). Plaintiff claims that an additional psychiatric examination was later demanded and undertaken, but produces no evidence that this examination ever took place to counter Defendant's affidavit citing records that show it did not. (Am. Compl. ¶¶ 93-96; Stellar Aff. ¶ 48)

Even if Plaintiff had succeeded in using the temporal inference to establish a causal connection between his protected activity and the adverse employment action, the same result would hold. The presumption of retaliation that thereby arose would disappear when Defendant explained the non-retaliatory cause for the evaluations, using the same evidence cited by the Court above in its rejection of Plaintiff's prima facie case. The Plaintiff has failed to show that "the articulated non-discriminatory reason for defendant's action is in fact a pretext for discrimination." Jetter, 324 F.3d at 76 (citing McDonnell Douglas, 411 U.S. at 804-05).

As the Plaintiff bears the burden of proof at all times, and this Court must grant summary judgment wherever no

reasonable jury could return a verdict for the plaintiff, the evidence Defendant submits would suffice under the second and third <u>McDonnell Douglas</u> prongs as well as under the first. <u>Jetter</u>, 324 F.3d at 76 (quoting <u>James v. New York Racing Ass'n</u>, 233 F.3d at 157 ("[T]he test for summary judgment is whether the evidence can reasonably support a verdict in plaintiff's favor."))

As to the retaliation claims based on mandated medical and psychiatric evaluations, summary judgment is GRANTED for the reasons cited in the discussion above.


3. Maichin's Conduct


The final claim presented by Defendant's motion is that DHCR cannot be held liable for any retaliatory acts Maichin may have committed.

Syken points to two timely incidents that he claims constitute harassment by Maichin.  In September of 1999, Maichin left a box of rubber gloves on Plaintiff's desk.  The Plaintiff interpreted this as a bribe, or "attempted gift to the Plaintiff in an effort to get the Plaintiff to drop the Complaint..." (Pl. Mem. Law at 22-23).  Plaintiff also alleges that approximately one year later, in September of 2000, Maichin attempted to discover the address of the Plaintiff's young neice.

The Plaintiff, in his Amended Complaint, outlines the torment he allegedly suffered at Maichin's hands and demands relief for the violation of his Title VII rights from DHCR. See Amended Complaint 92-119.  His allegations against DHCR most fairly suggest a hostile work environment claim that would create liability for his employer.  Resolving as it must all questions of fact, including witness credibility, in favor of the Plaintiff, the Court finds that no hostile work environment existed.

To survive summary judgment on his hostile work environment claim, Plaintiff must "produce evidence that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment." Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)).

Isolated instances of harassment such as those adduced by the Plaintiff will ordinarily not rise to this level. See, e.g., Kotcher v. Rosa & Sullivan Appliance Ctr., Inc., 957 F.2d 59, 62 (2d Cir. 1992). The plaintiff "must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment." Cruz, 202 F.3d at 570 (citing Perry v. Ethan Allen, Inc., 115 F.3d 143,

149 (2d Cir. 1997).)

Two incidents of small significance cannot suffice to establish a hostile work environment. See Alfano v. Costello, 294 F.3d 365, 379 (2d Cir. 2002) (rejecting a hostile work environment claim because five incidents in four years was insufficient to show required harm)(citing Celestine v. Petroleos de Venezuella SA, 266 F.3d 343, 354 (5th Cir. 2001) (in a twenty-five-month period, eight incidents of alleged racial harassment insufficient)).[7]  For such a small amount of prohibited conduct to amount to a hostile work environment, the incidents cited would have to be extremely serious.

In any event, even if the Plaintiff was correct in interpreting a box of surgical gloves left on his desk as a bribe, and if Maichin was in fact attempting to discover the address of the Plaintiff's neice, DHCR quickly addressed both

---

[7] Alfano also cites Title VII cases where the threshold for a finding of hostile work environment was crossed: cf. Schwapp v. Town of Avon, 118 F.3d 106, 112 (2d Cir.1997), ("held that the plaintiff had created a triable issue of fact based on ten to twelve instances of explicitly racist conduct in twenty months, where most of the incidents involved racial jokes and epithets"); see also Cruz v. Coach Stores, Inc., 202 F.3d 560, 571 (2d Cir. 2000)("found a triable issue as to whether a workplace was both racially and sexually hostile where the plaintiff demonstrated that a supervisor subjected her and others to blatant racial epithets on a regular if not constant basis, made repeated remarks'[sic] to the effect that women should not work, and physically harassed the plaintiff and other women by standing very close when he spoke to them, sometimes backing them into a wall and looking them up and down in a way that's very uncomfortable." (internal citations omitted)

incidents.  After Plaintiff complained about the gloves, Maichin received a memo instructing him to have "as little contact with Mr. Syken as possible."  (Stellar Aff. Ex. V)  After Plaintiff complained about Maichin's alleged inquiry about his neice, Maichin was summoned to a counseling session and given strongly-worded instructions to avoid the Plaintiff both in and away from the office. (Stellar Aff. Ex. W)  No further incidents occurred.

Plaintiff himself seems to acknowledge that a defendant in these circumstances bears no liability.  Plaintiff argues that "Defendant should have instructed Maichin not to have any contact with the Plaintiff unless it was work related." (Pl. Mem. Law ¶ 23)  Plaintiff neither addresses nor refutes the strong evidence that DHCR did just that.

Plaintiff argues that incidents occurring outside the period of limitations may be considered in determining whether or not a hostile work environment exists.  His assertion, as discussed above in reference to the promotion claim, is correct; prior acts may be used as background evidence in support of a timely claim.  See National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002).  None of the incidents cited, however, spread over a correspondingly longer time period, suggest a hostile work environment more strongly than do those within the limitations period.  As noted above, the Court assumed that Plaintiff's allegations of bias in Maichin's actions were true

for summary judgment purposes, rendering any additional evidence reinforcing that assumption unnecessary.

For the reasons cited, DHCR's motion for summary judgment with respect to its liability for Maichin's conduct is GRANTED.

## III. Conclusion

Summary judgment for defendant DHCR is GRANTED as to Plaintiff's claims for failure to promote, for unlawful retaliation by medical or psychiatric examination, and for Maichin's alleged retaliatory conduct. As to all remaining claims summary judgment is DENIED.

SO ORDERED.

Dated: December 21, 2006

Lawrence M. McKenna
U.S.D.J.